## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Derrick Benard** ) | |
| **5202 Sun Dew Ct** ) | |
| **Indian Head, MD 20640** ) | |
| ) | **Civil Action No.** _____ |
| **Plaintiff** ) | |
| ) | **Jury Requested** |
| v. ) | |
| ) | |
| **AMTRAK** ) | |
| **1 Massachusetts Avenue, NW** ) | |
| **Washington DC 20001** ) | |
| ) | |
| **Served on Resident Agent:** ) | |
| **William "Byi" Hermann** ) | |
| **Executive Vice President and** ) | |
| **General Counsel & Corporate Secretary** ) | |
| **Amtrak Headquarters** ) | |
| **1 Massachusetts Avenue, NW** ) | |
| **Washington DC 20001** ) | |
| ) | |
| **Defendant** ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Derrick Benard (hereinafter "Plaintiff" or "Mr. Benard"), by and through his undersigned counsel, and sues AMTRAK (hereinafter "Amtrak" or "Defendant"), and for cause of action states as follows:

## NATURE OF THE CASE

1. Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, for relief from racial discrimination.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

3. Venue is appropriate and is based on the fact that a substantial part of the action complained of are the result of actions and the employment practices of Defendant, a municipality within the District of Columbia.

## EXHAUSTION OF REMEDIES

4. On or about February 13, 2025, Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed a complaint against Amtrak alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et. seq.*, identified as EEOC Charge No.: 570-2025-01490.

5. Plaintiff has exhausted all of his administrative remedies.

6. Plaintiff submitted a Form 5 Charge to the EEOC alleging that Amtrak had violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon his race.

7. On February 18, 2025, Plaintiff received a Determination and Notice of Rights letter from the Equal Employment Opportunity Commission stating that Plaintiff had ninety (90) days to file suit, if he so desired.

8. On May 19, 2025, Plaintiff timely filed his action within ninety (90) days of receipt of the EEOC's "Notice of Right to Sue."

## PARTIES

9. Plaintiff is currently domiciled at 5202 Sun Dew Ct., Indian Head, Maryland.

Plaintiff is a resident of the State of Maryland and a United States citizen.

10. Defendant Amtrak is an instrumentality created by Congress to operate a mass transit system in the state of Maryland and the surrounding Metropolitan area and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore liable, pursuant to the doctrine of *Respondent Superior*.

## FACTS

11. Complainant, Derrick Benard, began working at Amtrak on January 30, 2012, as a police officer.

12. In April 2015, Mr. Benard became a Locomotive Engineer for Amtrak working in Washington, D.C.

13. In 2020, Mr. Benard was promoted to a Manager position at Amtrak where he managed Train Operations out of D.C.

14. Mr. Bernard successfully and satisfactorily performed the duties of his position, consistent with the legitimate expectations of Defendant.

15. On or about October 7, 2024, Mr. Benard was arriving for his 9:30 a.m. shift when he was followed into the Amtrak parking area by Brent Bartman ("Officer Bartman") a then fellow Amtrak Police Officer.

16. Officer Bartman approached his car and said something to the effect that when Mr. Benard passed Officer Bartman's vehicle, in Mr. Benard's vehicle, a strong odor of marijuana hit Officer Bartman in his face.

17. Mr. Benard then said, "are you kidding me?" There was no way Officer Bartman could have smelled an odor coming from his vehicle because his windows were closed and Mr. Benard's car windows were closed.

18. Officer Bartman used Mr. Benard's comment, reaction and appearance as the basis to racially profile Mr. Benard.

19. Officer Bartman is known within Amtrak by others to racially profile minority passengers on the Amtrak Platform as well as his minority co-workers.

20. Officer Bartman would routinely target his K-9 on minority passengers and co-workers to see if they are carrying drugs. Officer Bartman often pull the Amtrak Passenger Manifest to target and profile minority passengers.

21. On this day, Officer Bartman began to attempt to engage in small talk, but he was actually assessing my vehicle.

22. Officer Bartman was obviously scenting around to see if he could detect the smell of marijuana around Mr. Benard's car.

23. There were several vehicles in the area as Mr. Benard approached the entrance to the parking area, however, Mr. Benard's vehicle did not cross paths with Officer Bartman because they were arriving from different directions.

24. On the day in question, Officer Bartman had not begun his shift and therefore, he was not on duty and should not have stopped Plaintiff. Moreover, he was not in uniform.

25. Officer Bartman apparently reported the matter to his Supervisor, Sargent ("Sgt") Matthew Linderman, but failed to follow Amtrak's Policies & Procedures when he engaged Mr. Benard.

4

26. Mr. Benard exited his vehicle and was walking to sign in when he was engaged by Sgt Linderman who came around the corner and stated, "Oh, it's you."

27. Mr. Benard said that it was the second time he heard that remark, and inquired about what was going on.

28. Sgt Linderman said Officer Bartman had called him saying he had an employee pulling into the parking lot smoking weed.

29. Mr. Benard responded by saying to Sgt Linderman, "is this what we are doing now?"

30. Mr. Benard said, "why not go to the lower platform and see people arriving who are in fact smoking weed."

31. Officer Bartman got his K-9 and targeted the dog on Mr. Benard while he was speaking with Sgt. Linderman and the dog sniffed Mr. Benard and Mr. Benard's bag.

32. The dog did not alert Officer Bartman and then Officer Bartman left with the K-9 dog.

33. Mr. Benard then continued to check in and immediately filed a complaint based on how he was treated.

34. Mr. Benard complained that he was targeted because of his color and profiled.

35. Despite lodging the complaint on the day of the event, he has not been advised of the results of his complaint and was also denied its tracking number.

36. Amtrak policy requires Amtrak to provide Mr. Benard with a tracking number for his Complaint and begin an investigation of the complaint.

37. Mr. Benard believes that Amtrak has intentionally delayed an Investigation of his Complaint to allow Officer Bartman to resign without facing any discipline for his

5

discriminatory treatment and actions. However, Mr. Benard was told that he himself was the subject of an investigation based on Officer Bartman's false allegations against Mr. Benard.

38. Delaying long enough to let Officer Bartman resign also allowed Amtrak to respond to complaints about him with statement like, "Oh he is gone" and "He was not disciplined."

39. This caused Mr. Benard to suffer the unfortunate fate of being left out in the cold when the EEO investigator inquiries about the discriminatory treatment because once it is stated that the employee is gone, that usually ends the inquiry by the Commission and results in the Mr. Benard suffering discrimination without recourse.

40. Officer Bartman's shift had not started when he searched Mr. Benard. Therefore, he was not authorized to engage Mr. Benard and profile him as he did.

41. Mr. Benard was embarrassed and humiliated by the treatment he received by Officer Bartman and regarding how Amtrak failed to properly investigate the matter. Additionally, he was taunted by his colleagues and called "El Chapo" the "weed man" looked at as a drug dealer by some of his co-workers.

## COUNT ONE
### (Discrimination on the Basis of Race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)

42. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

43. As an African American, Plaintiff is a member of a protected class.

44. Plaintiff was subjected to adverse action in the form of racial profiling, targeting, labeling and an unwarranted investigation.

45. As these actions to which Plaintiff was subjected, they are demonstrably harsher

than that meted out by Defendant to Plaintiff's similarly situated white co-workers under similar circumstances. Plaintiff charges that Defendant's actions against Plaintiff was due to his race.

46. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment when he was racially profiled, targeted, labeled, harassed and subjected to an unwarranted investigation.

47. Defendant knew that Plaintiff is an African American prior to subjecting Plaintiff to the aforementioned material adverse employment actions.

48. As described above, Plaintiff has been treated differently and subjected to different terms and conditions of employment in comparison with his Caucasian co-workers.

49. As stated above, other employees that worked in the same position as Plaintiff, under the same management as Plaintiff, and were charged with the same, similar, or more egregious alleged misconduct as Plaintiff, but were members of a different class than Plaintiff by virtue of being Caucasian as opposed to African-American, have been treated more favorably then Plaintiff in the terms and conditions of employment.

50. These White Officers who were Plaintiff's coworkers and worked alongside Plaintiff have not been racially profiled, targeted and humiliated, for having engaged in the same, similar, or more egregious misconduct.

51. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

52. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

53. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

7

54. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his race (African American).

55. Defendant discriminated against Plaintiff because of his race (African American) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

56. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

57. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

58. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a. Award compensatory damages in a fair and just amount;

    b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would

  have received but for Defendant's unlawful conduct;

 c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

 d. Award reasonable attorney fees, costs, and expenses with interest incurred for this action;

 e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

 f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

 g. Supervisory training for the supervisors at issue herein;

 h. Award equitable, declaratory, and injunctive relief; and

 i. Award such other and further relief as this Honorable Court deems just and proper.

### Equitable Relief

59. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

60. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through its agents, servants, and employees.

9

## JURY DEMAND

61. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

May 19, 2025,                                    Respectfully submitted,

                                                By: */s/ Donna Williams Rucker*
                                                       Donna Williams Rucker
                                                       (DC Bar No. 446713)
                                                       Managing Partner Tully Rinckey, PLLC
                                                       2001 L Street, NW, Suite 902,
                                                       Washington, DC 20036
                                                       (202) 787-1900
                                                       (202) 640-2059
                                                       drucker@fedattorney.com

                                                       */s/ George Rose*
                                                       George A. Rose
                                                       Senior Counsel
                                                       Tully Rinckey, PLLC
                                                       2001 L Street, NW, Suite 902,
                                                       Washington, DC 20036
                                                       (202) 787-1900
                                                       (202) 640-2059
                                                       grose@tullylegal.com